**UNITED STATES of America**

v.

**SUN–DIAMOND GROWERS OF CALIFORNIA, Defendant.**

**No. 96–0193.**

United States District Court, District of Columbia.

Oct. 7, 1996.

---

Donald C. Smaltz, Barry Coburn, Office of the Independent Counsel, Alexandria, VA, for Plaintiff.

Richard A. Hibey, Eric W. Bloom, Charles B. Klein, Winston & Strawn, Washington, D.C., for Defendant.

## MEMORANDUM ORDER

URBINA, District Judge.

### Denying Sun–Diamond's Motion to Dismiss Counts V through IX of Indictment

This matter comes before the court upon Sun–Diamond's Fed.R.Crim.P. 12(b) motion to dismiss counts V through IX of the indictment.[1] Sun–Diamond maintains that the Federal Election Campaign Act, 2 U.S.C. §§ 431–455 (FECA), does not prohibit the conduct alleged in counts V through IX. Sun–Diamond further contends that FECA is unconstitutionally vague as applied to its conduct; and finally, that FECA violates the First Amendment of the United States Constitution.

After considering the parties' submission and the applicable law, the court concludes that FECA applies to post-election contributions to unsuccessful candidates; that FECA and the FEC opinions and cases that interpret it, provided Sun–Diamond sufficient notice of the prohibited conduct, and as such, is

---

1. Sun–Diamond made and the court considered this motion during the trial in this matter. The court has, however, reserved its ruling on this motion until after trial.

not unconstitutionally vague; and lastly, that FECA, as presently applied does not violate the First Amendment.

## I. Background[2]

On September 24, 1996, the jury in this case found Sun–Diamond guilty of making illegal gratuities to former Secretary of Agriculture Alphonse Michael (Mike) Espy. The jury also found Sun–Diamond guilty of wire fraud and making illegal campaign contributions. During the trial, Sun–Diamond filed a motion to dismiss counts V through IX of the indictment which alleged that Sun–Diamond violated FECA. Specifically, count V charged that Sun–Diamond made a contribution in excess of $2,000 to Henry Espy, Secretary Espy's brother, to help retire the debt of the former's failed Congressional campaign. Counts VI through IX charged that Sun–Diamond caused four individuals to each contribute $1,000 in corporate assets to retire Henry Espy's campaign debt. The jury found Sun–Diamond guilty on these counts.[3]

## II. Discussion

### A. Post–Election Contributions to Unsuccessful Candidates

FECA is the regulatory scheme which provides for limits on campaign contributions. The purpose of FECA's contribution limitations is to "limit the actuality and appearance of corruption" in federal elections. *Buckley v. Valeo*, 424 U.S. 1, 26, 96 S.Ct. 612, 638, 46 L.Ed.2d 659 (1976). It was Congress' intent to prevent current or potential office holders from receiving contributions from contributors who sought to secure "political *quid pro quo[s]* [.]" *Id.* Count V alleged that Sun–Diamond violated 2 U.S.C. § 441b(a) by con-

tributing over $2,000 to the Henry Espy for Congress. Committee to help retire Henry Espy's campaign debt. Section 441b(a) prohibits the making of a corporate campaign contribution *"in connection with any election"* for Congress. (emphasis supplied). Counts VI through IX alleged that Sun–Diamond violated 2 U.S.C. § 441f, which provides: "No person shall make a contribution in the name of another person or knowingly permit his name to be used to effect such a contribution. . . ." FECA defines the term contribution to include: "[A]ny gift, subscription loan, advance or deposit of money or anything of value made by any person *for the purpose of influencing any election for Federal office."* 2 U.S.C. § 431(8)(A) (emphasis supplied).

■ Congress failed to define the phrase "for the purpose of influencing any election," and further, did not state whether post-election contributions are subject to FECA.

A plain meaning cannot be discerned from the language of the statute [ ], and there is no legislative history to guide this court in determining the scope of the critical phrase. Thus, under *Chevron, USA, Inc. v. Natural Resources Defense Council*, 467 U.S. 837 [104 S.Ct. 2778, 81 L.Ed.2d 694] (1984), since Congress did not address the precise question at issue, leaving Congressional intent unclear, [this court] may not impose [its] own construction. Rather this court must determine whether the FEC's interpretation of FECA regarding post-election campaign contributions is a permissible construction.

*Federal Election Com'n v. Ted Haley Cong. Com.*, 852 F.2d 1111, 1114 (9th Cir.1988).[4]

**2.** For a more complete exposition of the facts surrounding this case *see United States v. Sun–Diamond*, 941 F.Supp. 1262 (D.D.C.1996).

**3.** Counts I and II charged Sun–Diamond with making *illegal gratuities to Secretary Espy.* The jury found Sun–Diamond guilty on count I; and not guilty on count II. Counts III and IV charged Sun–Diamond with wire fraud; and the jury so found.

**4.** Under *Chevron, USA, Inc.,*

When a court reviews an agency's construction of the statute which it administers, it is con-

fronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is

The FEC, in 1976, promulgated this regulation: "Contributions made to retire debts resulting from elections held after December 31, 1974 are subject to the limitations [of these regulations]." 11 C.F.R. § 110.1(g).[5] The FEC submitted this regulation for Congressional approval and Congress failed to disapprove the regulation thus "strongly imply[ing] that the regulations accurately reflect congressional intent." Id. (quoting Grove City College v. Bell, 465 U.S. 555, 568, 104 S.Ct. 1211, 1218, 79 L.Ed.2d 516 (1974)).[6] Moreover, as the Court of Appeals for the Ninth Circuit has observed, "though Congress has made other changes in the definition of 'contribution', it has not added a definition of 'for the purpose of influencing an election or federal office' nor did it create an exception for post-election contributions." Ted Haley Cong. Comm., 852 at 1114.

Congressional silence is made more poignant by the fact that the FEC has issued several opinions which clearly set forth its position that the FECA requirements apply to post-election contributions. "The Commission in both its regulations and prior advisory opinions has emphasized that funds raised after an election to retire election campaign debts are just as much for the purpose of influencing an election and in connection with the election as are those contributions received before the election." Advisory Opinion 1983-2, 1 Fed.Elec.Camp. Fin.Guide [CCH] ¶ 5709 (February 24, 1983). In another opinion, the FEC concluded that "monies received to defray the cost of post-election litigation which arises out of the election are treated the same as monies received to defray the cost of litigation during the election." Advisory Opinion 1981-16, 1 Fed.Elec.Camp.Fin.Guide [CCH] ¶ 5604 (April 15, 1981).[7]

If post-election contributions for the purpose of retiring campaign debts were not subject to FECA's limits, "it would permit candidates to evade FECA's restrictions on contributions and expenditures by running their campaigns at a deficit and then collecting contributions after the election." FEC v. Lance, 617 F.2d 365, 372 n. 4 (5th Cir.1980), cert. denied, 453 U.S. 917, 101 S.Ct. 3151, 69 L.Ed.2d 999 (1981). Thus, contrary to Sun–Diamond's argument, post-election contributors could seek to secure a political quid pro quo from potential office holders by making post-election contributions.

■ In sum, Sun–Diamond has not demonstrated that the FEC's interpretation of FECA through its regulations and advisory opinions is contrary to the plain meaning of the statute. The FEC's construction is entitled to due deference and the court concludes that the FEC's interpretation of post-election contributions as falling within the ambit of FECA is a permissible construction.[8] See Chevron, 467 U.S. at 844–45, 104 S.Ct. at 2782–83.

### B. FECA and the First Amendment

■ It is well settled that limitations on contributions to candidates are consistent

---

based on a permissible construction of the statute.
467 U.S. at 842–43.

**5.** An agency's interpretation of its governing statute is entitled to due deference. Florida Cellular Mobil Communications v. F.C.C., 28 F.3d 191, 196 (D.C.Cir.1994) (citing Udall v. Tallman, 380 U.S. 1, 16–17, 85 S.Ct. 792, 800–801, 13 L.Ed.2d 616 (1985)). Moreover, a statute should be construed the same way, whether it be for purposes of administrative action or criminal prosecution. F.C.C. v. American Broadcasting Co., 347 U.S. 284, 296, 74 S.Ct. 593, 600, 98 L.Ed. 699 (1954).

**6.** See also FEC v. Democratic Senatorial Campaign Comm., 454 U.S. 27, 34–35, 102 S.Ct. 38, 43–44, 70 L.Ed.2d 23 (1982) (Congress' failure to disapprove regulation is an "indication that Congress does not look unfavorably" upon the FEC's construction of FECA).

**7.** Even after the FEC's issuance of these opinions, Congress has not acted to modify the definition of the term "contribution."

**8.** Sun–Diamond contends that even if Congress intended to prohibit post-election contribution, FECA is void for vagueness. However, because FECA and the FEC opinions and cases that interpret it, provided Sun–Diamond with sufficient notice of the prohibited conduct, the statute is not void for vagueness as it relates to Sun–Diamond's conduct. See Connally v. Gen'l Construction, Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1925) (holding that "the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties[.]").

with the First Amendment where they are narrowly tailored to serve compelling government interests. The primary government interest advanced by FECA is the interest in preventing corruption or the appearance of corruption in the political process. *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976); *FEC v. National Conservative Political Action Committee,* 470 U.S. 480, 105 S.Ct. 1459, 84 L.Ed.2d 455 (1985).

> To the extent that large contributions are given to secure a political *quid pro quo* from current and potential office holders, the integrity of our system of representative democracy is undermined ... Of almost equal concern as the danger of actual *quid pro quo* arrangements is the impact of the appearance of corruption stemming from public awareness of the opportunity for abuse inherent in a regime of large individual financial contributions[.]

*Buckley v. Valeo,* 424 U.S. at 26–27, 96 S.Ct. at 638–39.

These concerns are similarly applicable vis-a-vis post-election campaign contributions to unsuccessful candidates. This is so because, as referenced above, a candidate could defer campaign contributions until after an election and thereby make illegal campaign contributions legal. Sun–Diamond's conduct, as found by the jury, clearly falls within the parameters of the type of behavior that would lead to the corruption of the political process, or at a minimum, to the appearance of corruption of the political process. Count V through IX charged Sun–Diamond (and the jury so found) with the following: Sun–Diamond's former Senior Vice President, Richard Douglas, and James H. Lake, a principal of a lobbying firm, Robinson–Lake, employed by Sun–Diamond, together devised a scheme to enable Sun–Diamond to make an unlawful corporate contribution in the name of another. To effect this contribution, Mr. Douglas and Mr. Lake agreed that Mr. Lake would obtain $1,000 contribution checks from several employees of Robinson–Lake. Robinson–Lake then invoiced Sun–Diamond for a false and fictitious expense sufficient to cover the contributions. Finally, Sun–Diamond's payment of the expense to Robinson–Lake

was used to reimburse the individuals that advanced the campaign contributions. If such conduct were permitted in connection with an election,[9] the judicially recognized purpose of FECA would be emasculated. Consequently, FECA, as presently applied, does not violate the First Amendment.

For the foregoing reasons, it is this 7th day of October 1996,

**ORDERED** that Sun–Diamond's motion to dismiss counts V through IX be and is hereby **denied.**

**SO ORDERED.**