IN THE SUPREME COURT OF PENNSYLVANIA
EASTERN DISTRICT

**CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, STEVENS, JJ.**

| | |
|---|---|
| COZEN O'CONNOR, | : No. 1 EAP 2014 |
| | : |
| Appellant | : Appeal from the Order of the |
| | : Commonwealth Court entered on June 18, |
| | : 2013 at No. 1744 CD 2012 affirming the |
| v. | : Order entered July 24, 2012 in the Court |
| | : of Common Pleas, Civil Division, |
| | : Philadelphia County at No. 0711, March |
| CITY OF PHILADELPHIA BOARD OF | : Term 2008. |
| ETHICS AND CITY OF PHILADELPHIA | : |
| AND THE HONORABLE ROBERT A. | : |
| BRADY AND FRIENDS OF BOB BRADY, | : |
| | : |
| Appellees | : ARGUED:  September 10, 2014 |

**OPINION**

MR. JUSTICE BAER                              DECIDED:  December 15, 2014

The primary issue in this appeal is whether a law firm's post-election forgiveness of a political campaign committee's unpaid legal fees, which were incurred due to the firm's representation of a candidate in a ballot challenge, is subject to the contribution limitations established in the Philadelphia Campaign Finance Law, Philadelphia Code Chapter 20-1000, *et seq*. ("Code"), as applicable in 2007.  The Commonwealth Court held that the post-election forgiveness of debt would constitute a "contribution" to the candidate's political campaign under Section 1001(6) of the Code, and, thus, was subject to the $10,000 per year contribution limitation set forth in Section 1001(2).  For the reasons set forth herein, we hold that the law firm's forgiveness of debt would not constitute a contribution to the candidate's political campaign as the debt at issue was

not incurred "for use in . . . influencing the election of the candidate." Id. § 1001(6). Accordingly, we reverse the order of the Commonwealth Court.

## I. Background

The record establishes that Robert Brady, a member of the United States House of Representatives from the First Congressional District, was a democratic candidate in the May 2007 primary election for Mayor of Philadelphia. Prior to the election, Thomas Knox, who was also a democratic mayoral candidate, filed a challenge to Brady's nomination petition, alleging defects in his statement of financial interests. The political campaign committee, "the Friends of Bob Brady Campaign Committee" ("Committee"), hired Cozen O'Conner ("the Firm") to represent Brady in the litigation. There is no evidence suggesting that the Firm agreed to provide representation *pro bono* or at a discounted rate. The Firm successfully litigated the ballot challenge, keeping Brady on the ballot. Brady, however, lost his bid for the nomination.

After the election, the Committee had debt of $593,555.42, of which $448,468.09 constituted legal fees owed to the Firm for its representation of Brady in defending the ballot challenge. To determine how it could retire the outstanding debt after the election, the Committee requested an advisory opinion from the Ethics Board regarding whether contributions it received after the election for purposes of retiring campaign debt were subject to the campaign contribution limits set forth in Sections 1002(1) and (2) of the Code, as they existed in 2007.[1]

---

[1] These sections provided:

> (1) Except as provided in subsection (6) [regarding contributions by a candidate to his/her campaign], no individual shall make total contributions per calendar year, including contributions made to or through one or more political committees, of more than two thousand five hundred dollars ($2,500) to a candidate for City elective office.

(continued…)

The Ethics Board subsequently issued its formal opinion, concluding that post-election contributions made to a political campaign to retire campaign debt, which had been incurred for use in advocating or influencing the election of the candidate, were subject to the Code's limits on contributions. In making this determination, the Ethics Board compared the Code's definition of "contribution" to the definitions of the same term in both state and federal campaign finance laws. Significantly, Section 1001(6) of the Code defines a "contribution" as "[m]oney, gifts, forgiveness of debts, loans, or things having a monetary value incurred or received by a candidate or his/her agent for use in advocating or influencing the election of the candidate."[2] Phila. Code § 1001(6).

The Ethics Board acknowledged that the Code's definition of "contribution," was not as explicit as the state election law's definition of "contribution," which encompasses, *inter alia*, "payments" or "forbearance" to a political committee "for the purpose of influencing any election in this Commonwealth or for paying debts incurred by or for a candidate or committee before or after any election."[3] Nevertheless, it did

---

(…continued)
> (2) Except as provided in subsection (6), no person, other than individuals who are covered under § 20-1002(1), and no political committee shall make total contributions per calendar year of more than ten thousand dollars ($10,000) to a candidate for City elective office.

Phila. Code § 20-1002(1), (2).

[2] The Code defines a "candidate" as an individual who files nomination papers or petitions for City elective office or who publicly announces his or her candidacy for City elective office. Id. at § 20-1001(2).

[3] The Pennsylvania Election Code defines "contribution" to mean:

> [A]ny payment, gift, subscription, assessment, contract, payment for services, dues, loan, forbearance, advance or deposit of money or any valuable thing, to a candidate or political committee made for the purpose of influencing any election in this Commonwealth or for paying debts
(continued…)

not believe that the Code's use of a less explicit definition of the term was indicative of City Council's intent to exclude post-election payments from the definition.

Rather, the Ethics Board found that the Code language at issue was more akin to the definition of "contribution" set forth in the federal campaign finance law, which, like the Code, specifically limited the amount of a contribution that may be given to a candidate, but was not explicit about whether the limit applied to a candidate's post-election fundraising. Ethics Board Advisory Opinion at 2-3.[4] It relied on the Federal Election Commission's interpretation of the federal statute as prohibiting post-election fundraising that exceeds contribution limits based on the policy that, otherwise, candidates could evade contribution restrictions by running their campaigns at a deficit, and later collecting contributions in excess of the Federal Election Code's limits after the

---

(…continued)

> incurred by or for a candidate or committee before or after any election. "Contribution" shall also include the purchase of tickets for events such as dinners, luncheons, rallies and all other fund-raising events; the granting of discounts or rebates not available to the general public; or the granting of discounts or rebates by television and radio stations and newspapers not extended on an equal basis to all candidates for the same office; and any payments provided for the benefit of any candidate, including any payments for the services of any person serving as an agent of a candidate or committee by a person other than the candidate or committee or a person whose expenditures the candidate or committee must report under this act. The word "contribution" includes any receipt or use of anything of value received by a political committee from another political committee and also includes any return on investments by a political committee.

25 P.S. §3241(b).

[4] The Federal Election Code defines "contribution" in pertinent part, as "any gift, subscription, loan, advance or deposit of money or anything of value made by any person for the purpose of influencing any election for Federal office." 2 U.S.C. § 431(8)(A)(i).

election.  Id. (citing United States v. Sun-Diamond Growers of California, 941 F. Supp. 1277, 1280 (D.D.C. 1996)).  Thus, the Ethics Board concluded that City Council's use of language similar to that appearing in the federal statute suggested that the ordinance be interpreted consistently with it, *i.e.*, that post-election contributions to retire campaign debt remain subject to the contribution limitations.

Thereafter, on March 3, 2008, the Firm filed a declaratory judgment action on its own behalf naming the Ethics Board and the City as defendants, seeking a declaration that post-election debt forgiveness to a political campaign was not a "contribution" under Section 1001(6) of the Code.  The Firm also sought a declaration that legal expenses incurred by the Committee were not "expenditures," and, therefore, funds raised by a campaign to defray such expenses were not subject to the contribution limits of the Code.[5]

The Ethics Board and the City filed preliminary objections to the Firm's complaint on April 14, 2008, arguing that the Firm lacked standing to seek the declaratory judgment.  On June 10, 2008, the trial court sustained the preliminary objections, and dismissed the Firm's complaint.  It held that the Firm did not have a direct interest in the litigation as its relationship with the Committee regarding the debt was too tenuous, and that an advisory opinion, such as that of the Ethics Board, is not a final adjudication subject to review by the court.

On appeal to the Commonwealth Court, the Firm contended that it had standing to pursue a declaratory judgment action because it could not collect, within a reasonable amount of time, the $448,468.09 the Committee owed in legal fees.  It also

---

[5] The Code defined "expenditures" as "[t]he payment, distribution, loan or advancement of money or any valuable thing by a candidate, political committee or other person for the purpose of influencing the outcome of a covered election."  Phila. Code § 20-1001(10).

contended that the Board's interpretation of the Code frustrated the Committee's efforts to raise funds to retire campaign debt. The Commonwealth Court affirmed the trial court's grant of preliminary objections, holding that the Firm, as a mere unpaid creditor, lacked standing to seek a declaratory judgment because it did not have a direct, immediate and substantial interest in the outcome of the appeal. Cozen O'Connor v. City of Philadelphia, Bd. of Ethics, 970 A.2d 504 (Pa. Cmwlth. 2009).

The Firm subsequently filed a petition for allowance of appeal with this Court, which we granted on December 29, 2009, limited to the issue of whether the Firm had standing to obtain a declaratory judgment to determine whether it could forgive the outstanding debt of the Committee at one time and in toto, without violating Philadelphia's campaign contribution limitations set forth in the Code. Cozen O'Connor v. City of Philadelphia, Bd. of Ethics, 987 A.2d 715 (Pa. 2009). This Court denied allocatur as to all remaining issues. Id.

In 2010, prior to this Court's resolution of the appeal on the standing issue, the Philadelphia Campaign Finance Law was amended in two pertinent respects. First, on June 16, 2010, Philadelphia Mayor Michael Nutter signed into law Bill No. 100122, which specifically limited post-election contributions. The Bill added a new term, "post-candidacy contribution" that expressly includes: "forgiveness of debts . . . received by a former candidate or his/her agent for use in retiring debt that was incurred to influence the outcome of a covered election . . . ." Phila. Code § 20-1001(14). The bill also provided an annual dollar limit of $10,600 on post-election contributions made by corporations. Id. § 20-1002(5).

Second, the Ethics Board promulgated a new Regulation No. 1, which expanded upon existing campaign finance regulations and took effect on September 27, 2010. See Philadelphia Board of Ethics Regulation No. 1. Section 1.28 added a provision

permitting a campaign creditor to forgive a former candidate's debt without being bound by contribution limitations if enumerated requisites were satisfied.[6]   Notably, Regulation No. 1 also provided a new means for candidates to handle legal defense costs,

---

[6]  Section 1.28 of  Regulation No. 1 was again amended in 2013, and states:

> If a debt owed by a former candidate is not collectible as defined below, a creditor may forgive the debt without such forgiveness being subject to the contribution limits set forth in Subpart B.  A debt is not collectible if all of the following are true:
>
> > a. The creditor billed the candidate for its services in the ordinary course of its business and the terms of the transaction were commercially reasonable;
> >
> > b. The debt has been outstanding for at least 24 months;
> >
> > c. The candidate political committee does not have sufficient cash on hand to pay the creditor;
> >
> > d. The candidate political committee receives less than $1,000 in contributions during the previous 24 months;
> >
> > e. The candidate political committee makes less than $1,000 in expenditures during the previous 24 months.
> >
> > f. Forgiveness of the debt is not prohibited by any other relevant law;
> >
> > g. The creditor and candidate disclose the forgiveness to the extent required by the Pennsylvania Election Code, if applicable; and
> >
> > h. The creditor notifies the Board by postal mail or email sent to the attention of the Board's Executive Director of its intent to forgive the debt and demonstrate that all conditions set forth in this Paragraph have been satisfied.

Philadelphia Board of Ethics Regulation No. 1, Subpart F, Section 1.28.

authorizing the establishment of a "litigation fund committee," Regulation No. 1, Subpart A, 1.1(n), which can receive enumerated contributions "that do not count toward contribution limits." Id., Subpart B, 1.11(a),(b).

Subsequently, this Court entered a decision on February 23, 2011, reversing the Commonwealth Court's finding of lack of standing, and remanding for further proceedings. Cozen O'Connor v. City of Philadelphia, Bd. of Ethics, 13 A.3d 464 (Pa. 2011) ("Cozen I"). We held that the Firm "sufficiently pled as a basis for relief in its declaratory judgment action its own inability to forgive the total outstanding debt without potentially violating the Ethics Board's interpretation of the campaign contribution limitations of the Code. . . ." Id. at 472. We went on to conclude that the Firm:

> possesses standing in this regard in that it has a substantial, direct, and immediate interest in knowing whether it may, in its own right, forgive the total outstanding debt owed to it by the Committee without running afoul of the Code's campaign contribution limitations, as interpreted by the Ethics Board, and thereby face significant fines and sanctions for such violations.

Id.

On remand, the parties filed cross motions for judgment on the pleadings. In the Firm's motion, it reiterated its request for a declaration that, under the Code as it existed in 2007, contribution limits did not apply to post-election campaign fundraising and/or the Firm's forgiveness of debt because the legal fees owed by the Committee did not constitute "expenditures" or "contributions." Following oral argument, the trial court entered an order denying the Firm's motion for judgment on the pleadings, and granted, in part, the Board's counterpart motion. It ruled that the case was controlled by the Code as it existed prior to the 2010 amendments, as those amendments were not retroactive.

In its Pa.R.A.P 1925(b) statement of errors complained of on appeal, the Firm contended that: (1) under the Code applicable in 2007, the legal fees incurred to defend

Brady in the ballot challenge were not incurred "for the purpose of influencing a covered election," and, thus, were not subject to regulation as covered "expenditures;" (2) the Firm's forgiveness of legal fee debt at one time and *in toto* would not constitute a "contribution" subject to limitation under the Code; and (3) the trial court erred in declining to address the scope and limitations of the Committee's ability to engage in fundraising to liquidate the debt at issue.

In support of its ruling in favor of the Ethics Board and the City, the trial court opined that the legal fees incurred to defend Brady in the ballot challenge were "for the purpose of influencing the election" and, thus, were "expenditures" under the law. Relying on the dictionary definition of "influence" as "the act or power of producing an effect without apparent exertion of force or direct exercise of command," Cozen O'Conner v. City of Philadelphia Bd. of Ethics, No. 1744 CD 2012, unpublished memorandum at 6 (Ct. Com. Pleas Phila. County filed Oct. 10, 2012) (citing Merriam-Webster Collegiate Dictionary (11th ed. 2003)), the trial court reasoned that defending the ballot challenge "influenced" the outcome of the election because the "only purpose of defending the right to remain on the ballot is so that the candidate can participate in the election." Id. at 7. The trial court further concluded that because the Firm's post-election forgiveness of the Committee's debt would be used to defray the cost of the legal fees, which had been incurred for the purpose of influencing the outcome of the election, such post-election forgiveness of debt at one time and *in toto*, constituted a "contribution" subject to campaign contribution limits.

Notably, the trial court recognized the inequity of its interpretation in that it did not provide for an exception to the contribution limits where, as here, there were unanticipated and involuntary expenses incurred due to the litigation of the ballot challenge. Id. at 7 n.2. The court found that the absence of such an exception to the

contribution limits will "undoubtedly chill the entry of well-qualified and needed ordinary citizens to seek offices." Id. It opined that this interpretation, while "abundantly clear" to the court, was "fundamentally unfair to the candidate, their counsel, and the citizenry" because all a candidate would have to do to thwart the political campaign of another candidate is to mount a legal challenge to the opponent's nomination petition, thereby creating unanticipated legal expenses for which there is no exception or safe harbor from the contribution limits. Id.

Finally, the trial court refused to address the scope or limitations on the Committee's ability to engage in post-election fundraising to pay the debt owed to the Firm (as opposed to the Firm's own ability to forgive the debt), as that matter was outside the scope of this Court's grant of allocatur in Cozen I, and, thus, was not properly before the trial court on remand.

The Commonwealth Court affirmed. Cozen O'Connor v. City of Philadelphia Board of Ethics, 71 A.3d 407 (Pa. Cmwlth. 2013). Preliminarily, it agreed that the issue regarding the Committee's ability to fundraise to satisfy its legal debt was outside the scope of this appeal because this Court, in granting allocatur in Cozen I narrowed review to whether the Firm had standing to seek a declaration regarding its own ability to forgive the debt *in toto* and at one time without restraints.

In analyzing the merits of whether the contribution limits in the Code applied to the forgiveness of the Committee's legal debt, the court found that resolution of this issue did not depend on whether the debt incurred was an "expenditure" of the Committee. Id., 71 A.3d at 415. Nevertheless, contrary to the trial court, the Commonwealth Court held that the Committee's unpaid legal debt could not qualify as an "expenditure" because an unpaid debt did not satisfy the Code's definition of the

term as encompassing a "payment, distribution, loan or advancement of money or any valuable thing." Phila. Code § 20-1001(10). Id. at 416.

The Commonwealth Court, however, agreed with the trial court that the Firm's forgiveness of the Committee's legal debt was a "contribution," subject to the Code's relevant contribution limitation of $10,000 per year. The court acknowledged that the "contribution" definition "neither expressly limits its reach to pre-election activities nor prohibits its extension to post-election activities." Id. at 421. It reasoned that it should liberally construe the term to effectuate the purpose of the Philadelphia Campaign law, which was to end the "pay to play" political culture in Philadelphia by eliminating large political contributions to political candidates to undermine the integrity of the electoral process. Id. at 420.

The court rejected the Firm's contention that the City's decision to adopt a definition of "contribution" different from that found in the State Election Code, which regulates post-election contributions expressly, evidences the City's intent to exclude post-election debt forgiveness from the restraints on campaign contributions. The court held that the definition of "contribution" chosen by City Council is so dissimilar from its state counterpart that no conclusion could be drawn as to what, if any, portions of the state law's extensive definition the City intended to incorporate in its more concise description of the term. Id. at 420.

Notwithstanding the lack of express language in the prior Code addressing post-election contributions, the Commonwealth Court viewed the 2010 amendments regulating post-election contributions as a clarification and codification of Ethics Board's advisory opinions that had applied contribution limits to post-election activities. It concluded that "contribution" was broad enough to embrace all contributions to candidates and their committees, whether made before or after an election. Id. The

court explained that it did not matter whether the contribution was made pre- or post-election, but only whether the purpose for which the Committee incurred the debt was to influence the outcome of the election of the candidate.

As did the Ethics Board in its advisory opinion, the Commonwealth Court held that its interpretation of "contribution" as including post-election activities was consistent with federal case law interpreting the federal campaign finance statute. It referenced the same policy reasons, *i.e.*, that excluding post-conviction activities from restraints on contributions would allow candidates to evade contribution limitations by running their campaigns at a deficit and then collecting contributions after the election. Id. at 421 (citing United States v. Crop Growers Corporation, 954 F. Supp. 335, 358 (D.D.C. 1997)).

Regarding the Firm's allegation that the debt was incurred only to secure Brady's right to be on the ballot, and not to influence the outcome of the election, the Commonwealth Court held that such argument "invites the willful suspension of disbelief." Id. The court explained that the undefined term "influence" should be interpreted according to its common and approved usage, which means "to affect or alter by indirect or intangible means" or "to have an effect on the condition or development of." Id. (citing Merriam-Webster's Collegiate Dictionary at 641 (11th ed. 2003)). Applying such definition, the Commonwealth Court held that legal fees incurred by a campaign committee to keep a candidate on the ballot are incurred for the purpose of influencing the outcome of an election.

Accordingly, the Commonwealth Court declared that should the Firm forgive all or any portion of the $448,468.09 legal debt owed by the Committee, such forgiveness is a "contribution" subject to contribution limits under the Code because forgiveness of debt is included in the definition of "contribution," the definition is not restricted to pre-

election forgiveness of debt, and the legal fee debt was incurred for the purpose of giving voters the opportunity to vote for Brady in the 2007 Democratic mayoral primary, which influenced the outcome of the election.

On January 6, 2014, this Court granted allocatur on four issues: rephrased and reordered for clarity, as follows: (1) whether post-election debt forgiveness to retire legal defense costs relating to a ballot challenge is regulated as a "contribution" under the Code as it existed in 2007; (2) whether such debt was incurred to influence the outcome of an election; (3) whether the Commonwealth Court's holding that such legal defense costs are not an "expenditure" affects the determination of whether they are a "contribution;" and (4) whether the Firm may seek in this appeal a declaration covering all means available to liquidate the legal fee debt at issue, including the Committee's ability to fundraise.

## II. The Parties' Arguments

The Firm contends that the post-election forgiveness of the Committee's unpaid legal debt for representing Brady in a ballot challenge is not a "contribution" to the candidate's political campaign, and, thus, is not subject to the contribution limitations under the Code as it existed in 2007. As explained infra, the Firm sets forth three primary reasons in support of its position: (1) the applicable definition of "contribution" does not encompass post-election activity; (2) the forgiveness of debt was not "for use in advocating or influencing the election of the candidate;" and, (3) the Commonwealth Court's holding that the unpaid legal debt was not an "expenditure" demonstrates that the forgiveness of such debt is not a "contribution."

First, the Firm submits that the following plain language employed in the Code's definition of "contribution" does not encompass post-election activities:

Money, gifts, forgiveness of debts, loans, or things having a monetary value incurred or received by a candidate or his/her agent for use in advocating or influencing the election of the candidate.

Phila. Code § 20-1001(6).

The Firm asserts that City Council utilized the Pennsylvania Election Code as the template for the local campaign finance law, yet that statute's definition of "contribution" specifically includes post-election activities. As noted, the Pennsylvania Election Code states, in relevant part:

The word "contribution" shall mean any payment, gift, subscription, assessment, contract, payment for services, dues, loan, forbearance, advance or deposit of money or any valuable thing, to a candidate or political committee made for the purpose of influencing any election in this Commonwealth or for paying debts incurred by or for a candidate or committee before or after any election. . . .

25 P.S. § 3241(b).

While adopting nearly the verbatim definition of "expenditure" as is set forth in the Pennsylvania State Election Code, the Firm emphasizes that City Council deviated from the state statute's definition of "contribution" by omitting the language above relating to payments received by candidates "after any election." Id. The Firm maintains that this evidences City Council's intent to exclude post-election debt forgiveness from the Code's contribution limits.

The Firm finds additional support for its position in the 2010 Code amendments, which, unlike the prior version of the Code, specifically regulate post-election contributions. As noted, in 2010, a new section was added defining a "post-candidacy contribution," and setting forth limits for such contributions. [7] Thus, it contends, the

_____

[7] As noted, the 2010 amendment defines the term as follows:

Post-candidacy contribution. Money, gifts, forgiveness of debts, loans, or things having a monetary value, received by a former candidate or his/her
(continued…)

amendment suggests that the prior version of the Code did not limit post-election contributions. The Firm argues that if the prior definition of "contribution" included post-election activity, the language of that provision could have been clarified; instead, a new section dealing with this subject was added.

The Firm relies on Superior Court case law opining that a change of language in a statute indicates a change of legislative intent. See Midvale Co. v. Unemployment Comp. Bd. of Review, 67 A.2d 380, 385 (Pa. Super. 1949) (providing that "it is an elemental rule of statutory construction that a change of language in a statute indicates a change of legislative intent"). The Firm suggests that here, City Council's amendment of the Philadelphia Code materially changed the existing law going forward by expanding it to regulate post-election liquidation of campaign debts. Thus, it concludes, such change makes it clear that the prior law, in effect in 2007, did not regulate post-election liquidation of campaign debts.

The Firm continues that the Commonwealth Court erred by relying on the federal court's interpretation of "contribution," as set forth in the federal campaign finance law, reiterating the policy that if the court would exclude post-election activity from the definition of "contribution," candidates could evade contribution limit laws by running a campaign at a deficit and collecting funds after the election. According to the Firm, the federal campaign finance law is irrelevant to the interpretation of a local ordinance.

In its second argument, the Firm contends that the post-election forgiveness of the Committee's legal fee debt, which was incurred to stave off a challenge to Brady's

---

(...continued)
>    agent for use in retiring debt that was incurred to influence the outcome of
>    a covered election, or for the purpose of defraying the cost of transition or
>    inauguration of a candidate elected to City elective office.

Phila. Code § 20-1001(14).

nomination petition, was not a "contribution" because it was not "for use in advocating or influencing the election of the candidate." Phila. Code § 20-1001(6). It views the Commonwealth Court's analysis as conflating the defense of a challenge to a nomination petition, which, if successful, allows the candidate to remain on the ballot, and the purportedly very different act of actually influencing the outcome of the election. The Firm acknowledges that debt incurred for defense of a lawsuit commenced against a candidate may have some collateral effect on an election, but contends that it cannot reasonably be encompassed by the Code's "contribution" definition. Rather, the Firm interprets the term "influencing" as requiring a showing that the debt forgiven was incurred to urge a prospective voter to choose one candidate over another -- *i.e.*, electioneering that a political campaign contributor with donative intent would promote.

The Firm argues further that the Commonwealth Court's interpretation of "influencing" as anything that "affects or alters an election by indirect or intangible means or that has an effect on the condition or development of an election," is far too broad because it ignores whether the effect on the election is intentional, incidental, or wholly unanticipated and unintended. This result, the Firm submits, is absurd.

The Firm emphasizes that it is undisputed that the legal fees were incurred solely to mount a legal defense on behalf of Brady against an opponent's challenge to his nomination petition; and not to influence the outcome of the election by urging the citizenry to cast their votes for Brady. By the undisputed facts and the unambiguous statutory language, monies received by the campaign for the express purposes of defraying the cost of such involuntary obligations cannot be considered "contributions" under § 20-1001(6), and, thus, the "contribution limits" of § 20-1002 cannot apply to such solicitations.

In its third argument, the Firm contends that the Commonwealth Court's holding that the Committee's unpaid legal fee debt is not an "expenditure" is incompatible with its holding that the debt constituted a "contribution." The Firm reasons that if the legal expenses are not regulated "expenditures" under the local campaign finance law, then the forgiveness of such debt cannot be regulated as a "contribution."

Finally, in its fourth contention, the Firm submits that the Commonwealth Court misinterpreted this Court's decision in Cozen I by concluding that it had standing only to seek a declaratory judgment as to whether it could forgive the Committee's legal debt *in toto* without violating the Code's campaign contribution limitations, and not whether it could seek a declaration regarding the Committee's ability to engage in fundraising to pay the debt. Ignoring that our allocatur grant in Cozen I was limited to the Firm's standing in terms of its own ability to forgive the debt at one time and *in toto,* the Firm emphasizes that this Court instructed in Cozen I that "upon remand, the parties are free to move forward regarding the merits of the case." Id., 13 A.3d at 470 n.5. The Firm interprets this language as permitting it to move forward on all aspects of the case, including the Committee's ability to fundraise, and urges our Court to correct the Commonwealth Court's finding of limited standing.

In response to the Firm's contention that the Code did not regulate post-election contributions in 2007**,** the Ethics Board argues that the Commonwealth Court was correct in examining the definition of "contribution," and concluding that such definition was not limited to pre-election activity. It acknowledges that the definition does not discuss explicitly whether post-election contributions are regulated, but emphasizes that the Code defines "contribution" as including "forgiveness of debt" where the debt was "incurred" to influence an election. The Ethics Board asserts that the only logical way to interpret "incurred" is to find that it modifies the term "debt," thus, forgiveness of a debt

that was itself incurred to influence the election is a covered contribution. It contends that the Firm's interpretation, excluding post-election transactions, gives no effect to the term "incurred." The ordinance, it reasons, must be interpreted so as to give effect to all of its language.

Further, the Ethics Board submits that reading the definition of "contribution" to include post-election activity best reflects the purpose of the Code. It notes that the Commonwealth Court recognized this Court's decision in Nutter v. Dougherty, 938 A.2d 401 (Pa. 2011), which held that the local campaign finance law was enacted in an effort to stem the "pay to play" political culture in Philadelphia by limiting campaign contributions to candidates for municipal office. Applying contribution limits to forgiveness of campaign debt after an election, it argues, is wholly consistent with remedying the "mischief" of "pay to play" politics and attaining City Council's anti-corruption objective.

The Ethics Board also argues that the Commonwealth Court's reasoning based upon analogous federal law is sound and should be upheld. It reiterates that federal law, like the Code, is silent as to whether a "contribution" includes post-election debt forgiveness. Nevertheless, federal courts and the Federal Ethics Commission ("FEC") have interpreted the federal campaign finance law to encompass post-election contributions for purposes of contribution limits for the same policy reasons that apply here, *i.e.*, that "exempting post-election contributions…would provide an opportunity for the exception to swallow the rule" by allowing candidates simply to run up debts and defer all fundraising until after the election. United States v. Crop Growers Corporation, 954 F. Supp. at 358.

Additionally, the Ethics Board refutes the Firm's claim that City Council's definition of "contribution" was derived from the Pennsylvania Election Code, but was

altered intentionally to exclude post-election contributions. As did the Commonwealth Court, it asserts that the definition of "contribution" contained in the local ordinance is so different from the definition of that term in the state statute that no light is shed on what provisions City Council intended to incorporate.

Regarding the 2010 amendment of the Philadelphia Code, the Ethics Board argues that the Firm relies on a distorted view of legislative history in positing that the amendment evinces City Council's previous intent to exclude post-election activities from contribution restrictions. It asserts that the decision relied upon by the Firm for the proposition that a change in a statute indicates a change of legislative intent, Midvale, supra, is a sixty year-old Superior Court decision. More germane, the Ethics Board argues, is this Court's decision clarifying that a change in language, at most, "ordinarily" indicates a change in intent. See Masland v. Bachman, 374 A.2d 517, 521 (Pa. 1977). Indeed, absent this interpretation, it contends, a legislature could never clarify its prior intent for fear that courts would treat this as a change in the law. The Ethics Board asserts that where amended language in a statute or ordinance is not inconsistent with the previous language and the purpose of the statute supports the view that the later amendment was a mere clarification, such a ruling is appropriate.

Thus, the Ethics Board argues that the "post-candidacy contribution" language adopted by City Council in 2010 is both consistent and clarifying in nature. Rather than altering existing law, it contends, City Council enacted the 2010 amendments, in recognition of the Ethic Board's previous interpretation of "contribution" as including post-election activities, and codifying it to avoid all doubt. To bolster its argument, the Ethics Board cites the legislative history of the enactment, which reflects that the Mayor's Chief of Staff cited to the Ethics Board's advisory opinion and noted that the

Mayor's Task Force on Ethics and Campaign Finance Reform recommended codifying the interpretation of the law the Board advocates herein.

In response to the Firm's contention that its forgiveness of the Committee's unpaid legal debt is not a "contribution" because it was not incurred "for use in advocating or influencing the election of the candidate," the Ethics Board agrees with the Commonwealth Court's adjudication of the issue. Faced with the undefined term, "influence," it asserts that the Commonwealth Court relied on the well-established rule of statutory construction that courts may look to "common and approved usage," including dictionary definitions, when interpreting undefined terms. The dictionary defines "influence," in relevant part, as "to affect or alter by an indirect or intangible means" or "to have an effect on the condition or development of." Merriam-Webster's Collegiate Dictionary at 641 (11th ed. 2003). The Ethics Board maintains that this definition is sufficiently broad to support the Commonwealth Court's conclusion that fees incurred to secure the right to appear on the ballot in the 2007 Democratic mayoral primary necessarily influenced the outcome of that election. In the Ethics Board's view, nothing can be more fundamental to the outcome of an election than who appears on the ballot. It maintains that candidates spend significant time and money to secure a sufficient number of valid signatures to appear on the ballot precisely because the determination of which candidates are listed on the ballot influences the election.

Next, the Ethics Board asserts that the Firm relies erroneously upon the Commonwealth Court's holding that the Committee's unpaid legal debt is not an "expenditure" to support its position that the forgiveness of such debt is not a "contribution." It argues that such contention ignores that the basis for the Commonwealth Court's ruling in this regard was that the Committee paid no funds to satisfy the legal fees incurred, thus, the unpaid debt is not a "payment, distribution, loan

or advancement of money or any valuable thing" as set forth in the definition of "expenditure." Phila. Code § 20-1001(1). The Commonwealth Court's holding that a campaign committee's unpaid legal fees should be classified as a debt rather than an expenditure, the Ethics Board argues, has no bearing on whether the post-election forgiveness of the legal fee debt constitutes a "contribution."

The Ethics Board emphasizes that this is not a case where the Committee is seeking to clarify the amount of money it can expend; nor does the Code limit the amount of permissible expenditures. It submits there is no textual basis in the Philadelphia Code or the Commonwealth Court's opinion for the argument that if a debt incursion was not an "expenditure" then the debt's liquidation is unregulated. Moreover, the Ethics Board asserts, the Firm's argument would lead to an absurd result in that the forgiveness of campaign debt of any sort would be unregulated solely because the original incursion of the debt was not an "expenditure" by the candidate. It concludes that the express inclusion of "forgiveness of debt" in the definition of "contribution" puts the Firm's erroneous contention to rest.

Finally, the Ethics Board argues that the Commonwealth Court was correct in interpreting this Court's decision in Cozen I as limiting the Firm's standing to seek a declaratory judgment regarding its ability to forgive, *in toto*, and at one time, the Committee's legal fee debt. It contends that our ruling in Cozen I did not encompass the Firm's request for a declaration regarding the Committee's ability to raise funds to pay the debt. The Ethics Board maintains that this Court limited the parameters of the Firm's declaratory judgment action in 2009, with its initial narrow allocatur grant, and in 2011, in Cozen I. Since then, it asserts, both the Commonwealth Court and the trial court have uniformly held that this declaratory judgment action involves only the Firm's

desire to clarify "its own right" to forgive the total outstanding legal fee debt owed to it by the Committee, without running afoul of the Code's campaign contribution limitations.

### III. Discussion[8]

Preliminarily, we address the Firm's contention that the scope of the appeal in this declaratory judgment action extends beyond the Firm's ability to forgive the Committee's legal fee debt without constraint and encompasses a declaration regarding the Committee's ability to fundraise to repay that debt. The Commonwealth Court was correct in concluding that this Court in Cozen I did not find that the Firm possessed standing to seek declaratory relief regarding whether the Committee may conduct unrestricted post-election fundraising to retire the debt owed to the Firm. As noted, in Cozen I, this Court delineated the Firm's standing in this action as follows:

> Having concluded that the Firm sufficiently pled as a basis for relief in its declaratory judgment action its own inability to forgive the total outstanding debt without potentially violating the Ethics Board's interpretation of the campaign contribution limitations of the Code, we, likewise, conclude that the Firm possesses standing in this regard in that it has a substantial, direct, and immediate interest in knowing whether it may, in its own right, forgive the total outstanding debt owed to it by the Committee without running afoul of the Code's campaign contribution limitations, as interpreted by the Ethics Board, and, thereby face significant fines and sanctions for such violations.

Cozen I, 13 A.3d at 472. The Firm's attempt to overcome this ruling by relying on additional language in Cozen I, directing that "upon remand, the parties are free to move forward regarding the merits of the case," id., 13 A.3d at 470 n.5, is simply

---

[8] This Court's review of the Commonwealth Court's order granting judgment on the pleadings is limited to deciding whether that court committed an error of law or whether unresolved questions of material fact remain. Bowman v. Sunoco, Inc., 65 A.3d 901, 904 (Pa. 2013). Because the Commonwealth Court's ruling involves conclusions of law, our scope of review is plenary. Id.

untenable. The "merits of the case," as employed here concern only the question of the Firm's ability to forgive the debt, and not the broader question of the Committee's ability to fundraise to retire the debt.

We proceed to examine the remainder of the Firm's claims. While the Firm presents multiple issues, we find that one overarching inquiry is dispositive, *i.e.*, whether, under the Code as it existed in 2007, the Firm's forgiveness of the Committee's legal debt, incurred to defend Brady in ballot challenge litigation, constitutions a "contribution," subject to the Code's contribution limitations. Before we return, once again, to the relevant Code language, we examine the canons of statutory construction that guide our review.

When interpreting a local law, as with a state statute, this Court looks to the Statutory Construction Act of 1972, 1 Pa.C.S. §§ 1501-1991, which provides that "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a); see Council of Middletown Twp. v. Benham, 523 A.2d 311, 315 (Pa. 1987). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." Id. § 1921(b). Additionally, we construe every statute "if possible, to give effect to all of its provisions." Id. § 1921(a). Finally, we presume that "the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable." Id. § 1922(1).

Examining the relevant language, the Code defines "contribution" as follows:

Money, gifts, forgiveness of debts, loans, or things having a monetary value incurred or received by a candidate or his/her agent for use in advocating or influencing the election of the candidate.

Phila. Code § 20-1001(6).

Upon consideration of the proposed constructions posited by the Firm and the Ethics Board, we conclude that, as applied to the circumstances presented, there are two elements to a "contribution." First, there must be a "forgiveness of debts," and, second, the debt to be forgiven must have been "incurred . . . by a candidate . . . for use in advocating the election of the candidate." Contrary to the Firm's contentions, the Code applicable in 2007 has no reference to when the contribution must be received; rather, Section 20-1001(6) modifies the forgiveness of debt only by qualifying that the debt must have been incurred or received "for use in advocating or influencing the election."

Thus, there is nothing in the express language of the provision to support the Firm's contention that City Council intended for "contributions" to be limited to exclude post-election contributions to a political campaign. Nevertheless, as recognized by the parties and the lower courts, this Court opined in Nutter v. Dougherty, 938 A.2d 401, 403 (Pa. 2011), that while the Pennsylvania Election Code does not place material limits on the sums that may permissibly be given to candidates, the Philadelphia Code was enacted in an effort to curb what has been characterized as a "pay to play" political culture by limiting campaign contributions to candidates for municipal office. There is no reason to treat a true donation made to a political campaign after the election any differently than one made prior thereto. Construed otherwise, the "pay to play" political culture that the Code was enacted to thwart could simply reemerge by delaying significant campaign donations until after the polls have closed and the election results have been announced.[9]

---

[9] We recognize that, as found by the Commonwealth Court and advocated by the Ethics Board, this policy concern is akin to that espoused by the federal courts and the FEC when interpreting the federal campaign finance law, which, like the Code at issue, does not include language in the definition of "contribution" extending the term expressly
(continued…)

We acknowledge that the State Election Code includes in its "contribution" definition: payments or forbearance "made for the purpose of influencing any election in this Commonwealth or for paying debts incurred by or for a candidate or committee before or after an election." 25 P.S. § 3241(b). For the enumerated reasons regarding the purpose for enacting the local campaign finance law and due to the great disparity in overall language between the state statute and local ordinance, see supra at n.3, however, we disagree that the failure to adopt the precise Code language above evinced City Council's intent to exclude post-election contributions from the limitations on campaign contributions.

We further discount the Firm's reliance on the 2010 Code amendments, which limit expressly contributions made after an election, as indicative of City Council's prior intent to exclude post-election activity from the contribution restraints. We are persuaded by the Ethics Board's position that the "post-candidacy contribution" language adopted by the City Council in 2010 is consistent with that Board's prior interpretation as stated in its Advisory Opinion in this case, and that the City Council intended to codify that interpretation to avoid all doubt, rather than to change the prior law.[10] The legislative history reveals that during the hearing before City Council, the Mayor's Chief of Staff cited the Ethics Board's Advisory Opinion in this case and noted

---

(…continued)
to include post-election contributions. See e.g. United States v. Crop Growers Corporation, 954 F. Supp. at 358 (holding that "exempting post-election contributions . . . would provide an opportunity for the exception to swallow the rule" by allowing candidates simply to run up debts and defer all fundraising until after the election). However, we agree with the Firm that the federal court's approach in no way governs interpretation of the local Philadelphia ordinance.

[10] For purposes relevant to our next discussion of whether the debt to be forgiven was incurred "for use in . . . influencing the election," we note that the advisory opinion based its decision on the timing of the contribution, i.e., that it was made after the election.

that the Mayor's Task Force on Ethics and Campaign Finance Reform recommended more explicitly codifying this interpretation into the law.

Our conclusion that post-election contributions are subject to the Code's contribution restrictions resolves a claim presented herein, but does not end our inquiry because it does not resolve the question of what constitutes a "contribution" under the prior Philadelphia ordinance. The Firm maintains that the requisites of a "contribution" have not been satisfied under the facts presented because the debt to be forgiven was not incurred "for use in advocating or influencing the election of the candidate." We agree.

In holding that "legal fees incurred by a campaign committee to keep a candidate on the ballot are incurred for the purpose of influencing the outcome of an election," Cozen O'Connor, 71 A.3d at 421, the Commonwealth Court relied on the dictionary definition of "influence," which is "to affect or alter by indirect or intangible means" or "to have an effect on the condition or development of." Id. (citing Merriam Webster's Collegiate Dictionary at 641 (11th ed. 2003)). It reasoned that a "candidate's placement on or removal from the ballot certainly influences the outcome of the election, as it directly impacts the choices voters will have when they cast their votes on Election Day." Id. The court opined that any assertion that ballot challenge litigation is not part of the political arena "invites the willful suspension of disbelief." Id.

While there is facial appeal to the Commonwealth Court's simplistic approach, we find that the consequences of such interpretation are unreasonable and lead to an absurd result. See 1 Pa.C.S. § 1922(1) (providing that in interpreting legislation, we presume that "the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable"). Initially, we agree with the Firm that the Commonwealth Court's overly broad construction of "influencing an election" conflates defending a

challenge to a candidate's right to appear on the ballot with the very different act of urging a prospective voter to choose one candidate over another, *i.e.*, electioneering that a political campaign contributor with donative intent would promote. The Commonwealth Court's interpretation of "influencing an election" as including "any transaction having an indirect effect upon an election" fails to consider whether such effect on the election is intentional, incidental, or wholly unanticipated.

This case illustrates this point, as there is no evidence suggesting that the Firm agreed to represent Brady in the ballot litigation *pro bono* or at a discounted rate in an effort to promote him as a candidate. Further, there is no evidence that the Committee, at the time it retained the Firm, anticipated that the Firm would forgive the debt once the election was over. Rather, the Firm performed the legal services with the intent of receiving compensation, and it has suffered an unanticipated business loss. Under the Commonwealth Court's construction of "influencing an election," routine agreements to provide goods or services made in the ordinary course of business between a political campaign committee and a creditor are transformed into political campaign contributions merely because the political committee subsequently failed to pay an amount owed. This absurd result cannot be what City Council intended when it characterized a contribution as money or forgiveness of debt incurred or received by the candidate "for use in advocating or influencing the election of the candidate." Phila. Code § 20-1001(6).

The trial court recognized the inherent injustice in such an interpretation, but did not appreciate or pragmatically consider that the Firm never made a contribution here. The trial court asserted:

> [T]he Philadelphia Code did not anticipate or imagine such a scenario under the Ordinance the [sic] underlying this litigation, because the Philadelphia Code does not establish the exception of such litigation and

the instances of unanticipated, involuntary expenses such as here. As the law is abundantly clear, it must be adhered to; the effect will undoubtedly chill the entry of well-qualified and needed ordinary citizens to seek offices, but the effect will also bring to mind this nightmare that has touched all levels of the adversary system, from administrative to the Pennsylvania Supreme Court. . . . While the intent of the Ordinance is to keep politicians and contributors transparent, the effect is to punish those who contribute and those who desire to serve the public. [The Ethics Board,] now appreciating the gravity of the lack of exception to the necessary involuntary expenses and contributions, can resolve the matter and prevent it from happening again as it is fundamentally unfair to the candidate, their counsel and the citizenry. All one has to do is to challenge the candidacy of another candidate as here with unanticipated, involuntary litigation, as there is no exception, or safe harbor for legitimate unanticipated, involuntary expenses.

Cozen O'Conner v. City of Philadelphia Bd. of Ethics, No. 1744 CD 2012, unpublished memorandum at n.2.

The trial court's recognition in this regard, albeit under the mistaken belief that City Council intended such an absurd result, suggests that the Firm's forgiveness of the Committee's legal fee debt was not meant to circumvent the local campaign finance laws' restraints on contributions to political campaigns, but was rather a business deal gone bad. This is particularly true where the debt forgiven involves unpaid legal fees for representation of a candidate in a ballot challenge. As the Firm cogently notes, "[t]he clear result of reading the term "contributions" as the Commonwealth Court and the Ethics Board have is that it would place non-wealthy candidates at a significant disadvantage and creates a strong incentive to file ballot challenge suits against non-wealthy candidates, which does nothing to improve the integrity of the election process." Reply Brief for Appellant at 9.

It is apparent that the Ethics Board heeded the trial court's warning, and, in the 2010 amendments to the Code, established litigation funds that were exempt from contribution limits and created a process whereby campaign creditors could forgive

campaign committee debts incurred in the normal course of business. See supra at 6-8 (outlining the 2010 amendments). As we did with the 2010 amendments relating to post-election contributions, we conclude that these portions of the 2010 amendments were clarifications of the prior law that had been misinterpreted by the courts below. Surely, City Council, in enacting the prior version of the Code, did not intend to limit the ability of a candidate to defend him or herself against ballot challenge litigation, or to preclude an arm's length vendor of goods (such as signs, buttons, or office supplies, etc.) or services (such as media consultants, pollsters, accountants, lawyers, etc.) from ever forgiving an unanticipated and uncollectible debt incurred in the normal course of business.[11]

Accordingly, we declare that, under the Code as it existed in 2007, the Firm's forgiveness of the Committee's legal debt, incurred to defend Brady in ballot challenge litigation, would not constitute a "contribution" that is subject to the Code's contribution

---

[11] Having concluded that legal fee debt incurred to defend Brady in ballot litigation was not incurred "for use in advocating or influencing the election," we need not elaborate on the Firm's contention that the Commonwealth Court's holding that the Committee's unpaid legal fee debt is not an "expenditure" is incompatible with its ruling that the debt constituted a "contribution." Summarily, we note our agreement with the Ethics Board's rebuttal that the Commonwealth Court found no "expenditure" solely because the Committee had never paid the legal fees, thus, there was no "payment, distribution, loan or advancement of money or any valuable thing," as set forth in the definition of "expenditure." Phila. Code § 20-1001(1). Such ruling has no bearing on whether post-election forgiveness of the legal fee debt constitutes a "contribution."

Madame Justice Todd and former Justice McCaffery did not participate in the consideration or decision of this case.

Mr. Chief Justice Castille and Messrs. Justice Saylor, Eakin and Stevens join the opinion.

restrictions.  The Firm may, therefore, forgive such debt at one time and *in toto* without violating the applicable local campaign finance law.

The order of the Commonwealth Court is reversed.

Madame Justice Todd and former Justice McCaffery did not participate in the consideration or decision of this case.

Mr. Chief Justice Castille and Messrs. Justice Saylor, Eakin and Stevens join the opinion.